IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs at Knoxville August 16, 2016

**BRUCE MENDENHALL v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 2008-C-2541      Steve R. Dozier, Judge**

───────────────

**No. M2015-02043-CCA-R3-PC – Filed November 28, 2016**

───────────────

The Petitioner, Bruce Mendenhall, appeals the Davidson County Criminal Court's denial of his petition for post-conviction relief from his convictions of three counts of solicitation to commit first degree premeditated murder and resulting effective thirty-year sentence. On appeal, the Petitioner contends that he received the ineffective assistance of trial counsel. Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Jesse Lords, Nashville, Tennessee, for the appellant, Bruce Mendenhall.

Herbert H. Slatery III, Attorney General and Reporter; M. Todd Ridley, Assistant Attorney General; Glenn R. Funk, District Attorney General; and Pamela Anderson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

According to this court's opinion from the Petitioner's direct appeal of his convictions,

> [i]n 2007, the Defendant was arrested and charged with the
> murder of Sara Hulbert. Sergeant Pat Postiglione and

Detective Lee Freeman of the Metropolitan Nashville Police Department (MNPD) led the murder investigation. Shortly after his arrest, the Defendant gave a statement alleging that he had nothing to do with Ms. Hulbert's murder and that three other individuals were responsible for killing Ms. Hulbert: Lori Young, Ritchie Kiem, and David Powell. However, the police were unable to find any evidence connecting these individuals to Ms. Hulbert's murder. While awaiting trial for the murder of Ms. Hulbert, the Defendant was housed at the Davidson County Sheriff's Department's (DCSD) Criminal Justice Center (CJC) in Nashville, Tennessee. On August 15, 2008, the Defendant was indicted for soliciting a fellow inmate, Roy Lukas McLaughlin, to commit the premeditated first degree murders of Ms. Young, Mr. Kiem, and Mr. Powell. The Defendant was also indicted for soliciting another fellow inmate, Michael Jenkins, to commit the premeditated first degree murders of Sgt. Postiglione and Det. Freeman. A jury trial on the charges was held from January 11 to January 15, 2010.

State v. Bruce D. Mendenhall, No. M2010-01381-CCA-R3-CD, 2013 WL 360525, at *1 (Tenn. Crim. App. at Nashville, Jan. 30, 2013), perm. to appeal denied, (Tenn. June 11, 2013). The jury convicted the Petitioner of soliciting Mr. McLaughlin to commit the first degree premeditated murders of Ms. Young, Mr. Kiem, and Mr. Powell, Class B felonies, but acquitted him of soliciting Mr. Jenkins to murder Sergeant Postiglione and Detective Freeman. Id. at *33. After a sentencing hearing, the Petitioner received three consecutive ten-year sentences. Id. at *1.

On appeal of his convictions to this court, the Petitioner raised various issues, including that the evidence was insufficient to support the convictions. See id. at *1. This court found the evidence sufficient, noting that Mr. McLaughlin testified that the Petitioner hired him to kill Ms. Young, Mr. Kiem, and Mr. Powell and that "wire recordings reveal[ed] that [the Petitioner] was actively planning the victims' murders with Mr. McLaughlin." Id. at *64, 66. After our supreme court denied the Petitioner's application for permission to appeal, he filed a timely pro se petition for post-conviction relief, claiming that he received the ineffective assistance of counsel.[1] Appointed counsel

---

[1] The Petitioner actually filed a form titled "PETITION UNDER 28 U.S.C.A. § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY." In a written order, the post-conviction court found that the claims presented in the petition were more often affiliated with claims for post-conviction relief. The court appointed counsel, ordered that counsel discuss the matter with the Petitioner, and ordered that counsel inform the court within thirty days as to whether the Petitioner

filed an amended petition. Relevant to this appeal, the Petitioner alleged that he received the ineffective assistance of counsel because trial counsel refused to present an entrapment defense and refused to present witnesses to testify against Mr. McLaughlin.

At the evidentiary hearing, the Petitioner testified that two attorneys represented him at trial but that he met with co-counsel more often than lead counsel. He acknowledged that counsel met with him regularly in jail and said that they discussed "different things that was going on with the court." The Petitioner said that Sergeant Postiglione had claimed the police "handed solicitation charges to my attorney." However, "[t]hat was a lie" because trial counsel was in Chicago when the indictment was filed and did not receive the indictment for one week. The Petitioner told co-counsel that he wanted to use an entrapment defense, but co-counsel refused. The Petitioner also gave lead counsel the names of eleven witnesses so she could have them "refute McLaughlin" at trial, but she "didn't use nary a one of them." The Petitioner said that two of the witnesses would have testified that they overheard Mr. McLaughlin tell fellow inmates that Mr. McLaughlin had "made a deal with the State." Regarding discovery, the Petitioner said, "A lot of it I didn't get." He said that he asked counsel for discovery but that they said his jail cell was too small for all of the documents. At the time of trial, counsel had not gone over discovery materials with the Petitioner, so he was "in the dark" about much of the evidence. He said he was unable to help with his defense because counsel "wouldn't ask for [his] help."

On cross-examination, the Petitioner acknowledged that in addition to counsel representing him in this case, they also represented him at his trial for murdering Sara Hulbert. The Petitioner was suspected of murders in other states. The State asked if he was aware that pursuing an entrapment defense could have opened the door to evidence of his other crimes, and he answered, "Not really, no." He acknowledged that counsel told him about the charges, met with him about discovery, went over police reports with him, and allowed him to review recordings. The State then asked, "They went over extensively what the State's proof would be, correct?" The Petitioner answered, "Somewhat." He said that lead counsel gave his list of eleven witnesses to the State. He said that he knew the names of a couple of the witnesses on the list but that he did not know the remaining names. He acknowledged that none of his proposed witnesses were at the evidentiary hearing.

Co-counsel testified that he had been licensed to practice law since 2002 and currently worked on civil and criminal cases in private practice. At the time of the appellant's case, though, he was a supervising attorney in the Davidson County Public Defender's Office, handling "[m]ostly serious felony cases." Co-counsel began

---

wanted to proceed with the matter as a petition for post-conviction relief.

representing the Petitioner when the Petitioner was arrested for killing Sara Hulbert. Subsequently, the Petitioner was charged in this case. Co-counsel went over the charges and discovery with him. Co-counsel said that he and the Petitioner "had to talk through a lot of things" but that the Petitioner seemed to understand their discussions. Counsel had their own expert conduct a mental evaluation of the Petitioner and obtained the services of a mitigation specialist. The Petitioner thought a videotape had been "doctored," so co-counsel consulted with an expert about the issue. However, there was no evidence the tape had been altered.

Co-counsel testified that he did not remember having any specific discussions with the Petitioner about an entrapment defense and that "I can say here today that it's not a defense that I think we would have pursued." He said the Petitioner's position was that "I didn't do it," not that "I did this but I was talked into doing it." The Petitioner brought "various people" to counsels' attention, and counsel interviewed "almost all of them."

On cross-examination, co-counsel testified that counsel talked with potential witnesses in Kentucky, Indiana, and Illinois and that "[t]he whole team of lawyers did this and met with all these people at their jobs and interviewed them." The Petitioner knew most of the potential witnesses "from years ago from where he grew up in Albion," but most of them were not involved in this case and would have "severely hurt" the case if called to testify. Co-counsel noted that the jury acquitted the Petitioner of two counts of solicitation.

In a written order, the post-conviction court denied the petition for post-conviction relief. Regarding the Petitioner's claim that counsel was ineffective for failing to pursue an entrapment defense, the court accredited co-counsel's testimony that he did not think entrapment was a valid defense and concluded that counsel made a strategic, tactical decision not to present it. As to the Petitioner's claim that counsel was ineffective for failing to call the eleven witnesses, the court again accredited co-counsel's testimony that co-counsel "followed up and investigated all witnesses that the petitioner provided but did not find any witnesses who could help the petitioner's case."

## II. Analysis

The Petitioner contends that he received the ineffective assistance of counsel, arguing that trial counsel was deficient by failing to provide him with the indictment until one week after it was issued, failing to pursue an entrapment defense, failing to provide him with discovery, and failing to present his eleven witnesses at trial. He argues that he was prejudiced by counsels' failure to provide him with discovery because it prevented him from analyzing and building his own defense and that he was prejudiced by counsels' failure to call the eleven witnesses to testify because "[i]f any one witness had

testified, it is probable that the verdict would have been different." The State claims that the post-conviction court properly denied the petition. We agree with the State.

To be successful in a claim for post-conviction relief, a petitioner must prove the factual allegations contained in the post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Generally, [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component. Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697).

Initially, we note that the fact section of the Petitioner's brief fails to comply with Rule 27(a)(6), Tennessee Rules of Appellate Procedure, which requires that an

appellant's brief contain "[a] statement of facts, setting forth the facts relevant to the issues presented for review with appropriate references to the record." The statement of facts in the Petitioner's brief is only three sentences in length and consists of only the Petitioner's testimony at the evidentiary hearing.

As to the Petitioner's claim that counsel were ineffective for failing to present an entrapment defense, the post-conviction court accredited co-counsel's testimony that entrapment was not a valid defense. We note that the Petitioner has not cited to any evidence at trial that would have supported an entrapment defense and did not present any such evidence at the evidentiary hearing. As to his claim that counsel was ineffective for failing to present his eleven witnesses, the Petitioner said at the hearing that two of the witnesses would have testified that they overheard Mr. McLaughlin tell fellow inmates that Mr. McLaughlin had made a deal with the State. The Petitioner has not explained how the other nine could have refuted Mr. McLaughlin's testimony. Moreover, he did not present any of the witnesses at the evidentiary hearing. Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). We may not speculate on what benefit the witnesses may have offered to the Petitioner's case. Id.

The Petitioner also alleges that counsel was deficient by failing to provide him with the indictment until one week after it was issued and by failing to provide him with discovery. As noted by the State, the Petitioner failed to raise these issues in his petitions for post-conviction relief, and the post-conviction court did not address them in its order denying relief. See Tenn. R. App. P. 36(a). In any event, regarding the indictment, the Petitioner testified that counsel did not receive the indictment until one week after it was issued because they were in Chicago. Moreover, he acknowledged that counsel explained the charges to him, and he has not alleged how he was prejudiced by his not receiving the indictment earlier. Regarding discovery, the Petitioner acknowledged on cross-examination that counsel met with him about discovery, went over police reports with him, and allowed him to review recordings. He has not offered any specific examples of discovery materials that counsel withheld from him or offered any specific explanation as to how he was prejudiced by the withholding of discovery. Thus, we agree with the post-conviction court that the Petitioner is not entitled to relief.

## III. Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

_____
NORMA MCGEE OGLE, JUDGE